## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case: 1:08-cv-00271 |
| LA SALLE BANK N.A., | ) ) | |
| LASALLE BUSINESS CREDIT, LLC, | ) ) | |
| Defendants. | ) | |

### MOTION TO STAY PROCEEDINGS

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") moves the Court to stay all proceedings in the above-captioned civil action through December 31, 2008, to allow PBGC to render a final administrative determination of the Defendants' liability, if any, under 29 U.S.C. § 1362(b)(1) resulting from the termination of the Arkansas General Industries, Inc. Hourly-Wage Employees Group Pension Plan (the "Plan"), which is the liability PBGC has brought this action to collect.

The attached Statement of Points and Authorities states with more particularity the grounds for this Motion. A proposed Order is also attached.

Pursuant to Local Civil Rule 7(m), on June 16, 2008, counsel for PBGC and the Defendants discussed this Motion. PBGC infers from a subsequent letter from opposing counsel that the Defendants oppose the Motion.

WHEREFORE, PBGC respectfully requests that its Motion to Stay Proceedings be granted.

Respectfully submitted,


Dated: June 20, 2008                    /s/ Merrill D. Boone
                                        ISRAEL GOLDOWITZ
                                        Chief Counsel, D.C. Bar No. 291120
                                        KAREN L. MORRIS
                                        Deputy Chief Counsel, D.C. Bar No. 419786
                                        STEPHANIE L. THOMAS
                                        Assistant Chief Counsel, D.C. Bar No. 440205
                                        MERRILL D. BOONE
                                        Attorney, D.C. Bar No. 431428

                                        PENSION BENEFIT GUARANTY
                                            CORPORATION
                                        Office of the Chief Counsel
                                        1200 K Street, N.W.
                                        Washington, DC 20005-4026
                                        Tel. No. (202) 326-4020, ext. 3656
                                        Fax No. (202) 326-4112
                                        Boone.Merrill@pbgc.gov & efile@pbgc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PENSION BENEFIT GUARANTY      )
CORPORATION,      )
     )
     Plaintiff,      )
     )
     v.      )      Case: 1:08-cv-00271
     )
LA SALLE BANK N.A.,      )
     )
LASALLE BUSINESS CREDIT, LLC,      )
     )
     Defendants.      )

## STATEMENT OF POINTS AND AUTHORITIES

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") submits this Statement of Points and Authorities in support of its Motion to Stay Proceedings. As explained below, all proceedings in the above-captioned civil action should be stayed through December 31, 2008. The stay would allow PBGC to render a final administrative determination, under 29 C.F.R Part 4003, of the Defendants' liability, if any, under 29 U.S.C. § 1362(b)(1) resulting from the termination of the Arkansas General Industries, Inc. Hourly-Wage Employees Group Pension Plan ("AGI Plan"), which is the liability PBGC has brought this action to collect.

## Background

PBGC is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461 (2000 & Supp V 2005).[1] PBGC assures the timely payment of

---

[1]      29 U.S.C. § 1302(a).

guaranteed pension benefits to participants in pension plans that terminate when covered by Title IV of ERISA ("Title IV").[2]  PBGC is funded primarily through premiums paid by pension plan sponsors.  PBGC is mandated by statute to maintain such premiums "at the lowest level" consistent with Title IV's purposes.[3]  PBGC carries out this mandate by, *inter alia,* enforcing the various claims provided to PBGC under Title IV.

When a single-employer pension plan terminates under 29 U.S.C. § 1342, the contributing sponsor of the plan and each member of the contributing sponsor's controlled group, as of the termination date, are jointly and severally liable to PBGC ("Employer Liability").[4]  A "controlled group" is a group of corporations or other business organizations connected by certain levels of common ownership.[5]  The amount of Employer Liability is the total amount of the unfunded benefit liabilities of the plan as of the termination date, plus interest.[6]  "Unfunded benefit liabilities" means, as of any date, the excess of the value of benefit liabilities under the plan (determined as of such date on the basis of assumptions prescribed by PBGC) over the current value (as of such date) of the assets of the plan.[7]  After a plan is terminated, pursuant to

---

[2]    29 U.S.C. §§ 1302(a)(2), 1321, 1322.  In the United States Code, Title IV of ERISA is referred to as Subchapter III of Chapter 18 of Title 29.  For brevity's sake, this brief uses the term "Title IV."

[3]    29 U.S.C. § 1302(a)(3).

[4]    29 U.S.C § 1362(a)(1).

[5]    29 U.S.C. § 1301(a)(14); 29 C.F.R. § 4001.3(b); 26 C.F.R. § 1.414(b)-1(a); 26 U.S.C. § 1563(a); 26 C.F.R. § 1.414(c)-2.

[6]    29 U.S.C. § 1362(b)(1).

[7]    29 U.S.C. § 1301(a)(18).

the agency's administrative review regulation, PBGC typically makes an administrative determination of Employer Liability and gives persons aggrieved by the determination the opportunity to appeal it to PBGC's Appeals Board.[8]

By a September 29, 2003, order of the U.S. District Court for the Eastern District of Arkansas (PBGC Exhibit 1), the AGI Plan was terminated under 29 U.S.C. § 1342(c), with a termination date of February 19, 2002.  By letter of February 15, 2008 ("Initial Determination Letter," or "IDL," PBGC Exhibit 2), PBGC notified the Defendants of its initial determination of the Employer Liability for the AGI Plan, including its subsidiary determinations that 1) as of the AGI Plan's termination date, both of the Defendants were in a controlled group with AGI Plan sponsor Arkansas General Industries, Inc. ("AGI"); 2) as of the AGI Plan's termination date, the AGI Plan's unfunded benefit liabilities were $738,569; and 3) interest of $325,619.64 had accrued on the Employer Liability through January 31, 2008.  The IDL also notified the Defendants of their right to appeal the initial determination within 45 days.

Generally, PBGC may not bring a civil action more than six years after a cause of action for Employer Liability arises.[9]  Under the more conservative reading of the statute, an Employer Liability cause of action arises on the plan's termination date.[10]  Because the AGI Plan's

---

[8]      *See* 29 C.F.R. § 4003.1(a), (b)(9).

[9]      29 U.S.C. § 1303(e)(6).

[10]     *See PBGC v. Carter & Tillery Enterprises,* 133 F.3d 1183, 1185 (9th Cir. 1998) (assuming statute of limitations period was six years from plan's termination date).

3

termination date was February 19, 2002, PBGC filed a Complaint to commence this action on February 19, 2008.[11]

By letter of March 31, 2008 ("Appeal Letter," PBGC Exhibit 3), the Defendants insisted on *de novo* review by this Court of "all actions and determinations by the PBGC," while appealing to the PBGC Appeals Board under protest. Also in the Appeal Letter, the Defendants asked PBGC to produce all documents it relied upon or considered in making its initial determination. Under the Freedom of Information Act ("FOIA"), PBGC released the documents requested by the Defendants.[12]

PBGC served the Defendants with a First Amended Complaint on May 9, 2008. On May 29, 2008, identical Answers to the First Amended Complaint were filed on behalf of each of the Defendants. In their Answers, the Defendants denied that they are liable for the Employer Liability for the AGI Plan at all.[13] They also contested PBGC's allegations regarding the amount of AGI Plan Employer Liability.[14]

By letter of June 13, 2008 (PBGC Exhibit 7), PBGC's Appeals Board ordered the Defendants to submit a brief by July 18, 2008, setting forth in detail the basis for their appeal and

---

[11]     *See Eagle-Picher Indus. v. EPA,* 759 F.2d 905, 909 (D.C. Cir. 1985) ("petitioners who delay filing . . . on their own assessment" of the statute of limitations "do so at the risk of finding their claims time-barred").

[12]     PBGC released most of the documents on May 14, 2008; additional documents on May 22, 2008; and the remaining documents on June 10, 2008 (PBGC Exhibits 4-6). While the cover letter for the first release indicated that the Defendants' FOIA request was dated March 12, 2008, in fact, as noted above, it was not made until March 31, 2008.

[13]     Answers at ¶¶ 37-38.

[14]     Answers at ¶¶ 39-44.

4

the relevant facts, documentary evidence, and legal authority.  PBGC expects that by mid-December 2008, the Appeals Board will issue its decision regarding the Defendants' liability, if any, which will be the final agency action with respect to the determination.[15]  Pursuant to Local Civil Rule 7(m), on June 16, 2008, counsel for PBGC and the Defendants discussed this Motion.  PBGC believes that Defendants oppose the Motion, based on a letter from Defendants' counsel stating that they "see no need to stay the Court proceedings."

## Argument

PBGC moves the court to stay the proceedings in this civil action through and including December 31, 2008, to allow PBGC to make a final administrative determination of the Employer Liability for the AGI Plan.  The prudential doctrine of exhaustion of administrative remedies supports such a stay.

PBGC has made an initial administrative determination that the Defendants are subject to Employer Liability for the AGI Plan.  PBGC's regulation provides an administrative remedy for an adverse initial determination of Employer Liability, *i.e.* an appeal to the PBGC Appeals Board.[16]  Thus, the Defendants will not have exhausted their administrative remedies until the Appeals Board has issued a decision granting or denying their appeal.[17]  By insisting (in the Appeal Letter) on *de novo* review by this court, and by opposing the instant motion for a stay of this action pending their appeal, Defendants are seeking judicial relief, *i.e.* a judgment reversing PBGC's initial determination, before exhausting their administrative remedies.

---

[15]     *See* 29 C.F.R. § 4003.59(b).

[16]     29 C.F.R. §§ 4003.1(a), (b)(9), 4003.51 *et seq.*

[17]     *See* 29 C.F.R. § 4003.7.

5

Requiring exhaustion in this case is supported by the policies underlying the doctrine.  As the Court of Appeals for the District of Columbia Circuit explained in a recent case involving PBGC,  administrative exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."[18]

First, "'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'"[19]  Congress has charged PBGC to administer Title IV of ERISA.[20]  PBGC has primary responsibility for determining Employer Liability under 29 U.S.C. § 1362, which is part of Title IV, like the statute at issue in *Boivin*, 29 U.S.C. § 1322.[21] The *Boivin* Court noted that "'an agency ought to have an opportunity to correct its own mistakes [regarding] the programs it administers . . . .'"[22]  If, as alleged in the Appeal Letter, PBGC's determination of Employer Liability for the AGI Plan is mistaken, PBGC ought to have the opportunity correct that mistake before its determination is reviewed by this court.

An agency's correction of its own mistakes benefits the court as well as the agency.  "'By giving an agency the opportunity 'to correct its own errors, a judicial controversy may well be mooted'."[23]  In other words, If PBGC's Appeals Board decides that the Defendants are not liable

---

[18]     *Boivin v. U.S. Airways, Inc.,* 446 F.3d 148, 155 (D.C. Cir. 2006), *quoting McCarthy v. Madigan,* 503 U.S. 140, 145 (1992).

[19]     *Boivin,* 446 F.3d at 155, *quoting McCarthy,* 503 U.S. at 145.

[20]     29 U.S.C. § 1302(a).

[21]     *Boivin,* 446 F.3d at 152-53 (plaintiffs alleged errors in PBGC's interpretation of 29 U.S.C. § 1322(b)(1) and 29 C.F.R. §§ 4022.22, 4022.25(b), 4022.62).

[22]     *Boivin,* 446 F.3d at 155, *quoting McCarthy,* 503 U.S. at 145.

[23]     *Id*.

for AGI Plan Employer Liability, PBGC will seek to have this case dismissed voluntarily under Rule 41(a), with prejudice.

To the extent that exhaustion of the administrative process does not moot the case, it will produce an administrative record, which should obviate discovery and a trial, because "[i]t is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made."[24]  And having an administrative record is especially useful "in a complex or technical factual context."[25]  In this case, the Defendants effectively deny PBGC's allegation regarding the value of benefit liabilities under the AGI Plan.  As indicated by a cursory review of PBGC's Actuarial Case Memo for the AGI Plan (PBGC Exhibit 8), the factual context for the determination of the AGI Plan benefit liabilities is complex and technical.

ERISA does not expressly require the exhaustion of administrative remedies.[26]  PBGC's longstanding regulation establishes a two-step process for issuing and reviewing certain agency determinations before they become final agency action.[27]  Where exhaustion is not required by statute, "sound judicial discretion governs."[28]  But even where exhaustion is left to judicial discretion, the scope of that discretion is narrow.  In a previous ERISA case, the Court of

---

[24]     *See, e.g., Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 284 (D.C. Cir. 1981) *(citations omitted)*.

[25]     *Boivin,* 446 F.3d at 155, *quoting McCarthy,* 503 U.S. at 145.

[26]     *Boivin,* 446 F.3d at 153.

[27]     29 C.F.R. §§ 4003.1(a).

[28]     *McCarthy,* 503 U.S. at 144 (1992), *citing McGee v. U.S.,* 402 U.S. 479, 483, n. 6 (1971).

Appeals for the District of Columbia Circuit noted that "[t]he general rule in this circuit is that the exhaustion requirement 'may be waived in only the most exceptional circumstances'. "[29]

No exception to the exhaustion doctrine applies to this case. In the Appeal Letter, the Defendants argue that this civil action has rendered an administrative appeal of PBGC's initial determination "futile and illusory." There is a "futility exception," but it "has been applied only when resort to administrative remedies is clearly useless."[30] This civil action in no way rendered resort to administrative remedies useless, because this court may stay the proceedings in this action to allow completion of the administrative process.

---

[29]     *Communications Workers of Am. v. AT & T,* 40 F.3d 426, 432 (D.C. Cir. 1994), *quoting Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs,* 714 F.2d 163, 168-69 (D.C. Cir. 1983).

[30]     *Boivin,* 446 F.3d at 157, *quoting Communications Workers of Am.,* 40 F.3d at 432.

## Conclusion

For the foregoing reasons, Plaintiff PBGC respectfully requests that its Motion to Stay

Proceedings be granted.  A proposed Order is attached.

Respectfully submitted,


Dated: June 20, 2008                                 /s/ Merrill D. Boone
                                                     ISRAEL GOLDOWITZ
                                                     Chief Counsel, D.C. Bar No. 291120
                                                     KAREN L. MORRIS
                                                     Deputy Chief Counsel, D.C. Bar No. 419786
                                                     STEPHANIE L. THOMAS
                                                     Assistant Chief Counsel, D.C. Bar No. 440205
                                                     MERRILL D. BOONE
                                                     Attorney, D.C. Bar No. 431428

                                                     PENSION BENEFIT GUARANTY
                                                         CORPORATION
                                                     Office of the Chief Counsel
                                                     1200 K Street, N.W.
                                                     Washington, DC 20005-4026
                                                     Tel. No. (202) 326-4020, ext. 3656
                                                     Fax No. (202) 326-4112
                                                     Boone.Merrill@pbgc.gov & efile@pbgc.gov

# EXHIBIT 1



**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF ARKANSAS (Western Division)**

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 4-03-CV-00361SMR |
| | ) |
| AGI OLDCO, INC., as administrator of the | ) |
| Arkansas General Industries, Inc. Hourly-Wage | ) |
| Employees Group Pension Plan, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFAULT JUDGMENT ORDER

**THIS CAUSE** is before the Court on the Motion for Judgment by Default of plaintiff

Pension Benefit Guaranty Corporation ("PBGC"). On August 25, 2003, a Default was entered

as to defendant AGI Oldco, Inc. ("AGI"). Accordingly, it is

**ORDERED and ADJUDGED**, that Judgment by Default be and the same is entered in

favor of PBGC; and it is

**FURTHER ORDERED**, under 29 U.S.C. § 1342(c), that Arkansas General

Industries, Inc. Hourly-Wage Employees Group Pension Plan ("Plan") is terminated; and it is

**FURTHER ORDERED**, under 29 U.S.C. § 1348(a)(4), that February 19, 2002, is

established as the termination date of the Plan; and it is

**FURTHER ORDERED**, under 29 U.S.C. § 1342(c), that PBGC is appointed as

statutory trustee of the Plan; and it is

**FURTHER ORDERED**, under 29 U.S.C. § 1342(d)(1)(A)(ii), (f), that AGI, its

agents, and any other person having records, assets, or other property of the Plan shall transfer

to PBGC, at PBGC's request, all such records, assets, and other property; and it is

**FURTHER ORDERED**, under 29 U.S.C. § 1342(d)(1)(A)(vii), (f), that AGI and its

agents shall furnish PBGC, at PBGC's request, any information with respect to the Plan that

PBGC may reasonably need in order to administer the Plan.

**DONE AND ORDERED** this _29th_ day of _Sept._, 2003.

_Stephen M. Reasoner_
**STEPHEN M. REASONER**
**UNITED STATES DISTRICT JUDGE**

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
ON _9/30/03_ BY _Cmt_

2

# EXHIBIT 2

 **PBGC**
Protecting America's Pensions    Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026

VIA OVERNIGHT COURIER                                    FEB 15 2008

Citimortgage, Inc.                          LaSalle Business Credit, LLC
c/o CT Corporation System                   135 S. LaSalle Street
1025 Vermont Ave. N.W.                       Chicago, IL 60603
Washington, D.C. 20005

                                            Standard Financial Corp.
Independence One Mortgage                   c/o Edward H. Kaplan
Corporation                                 1000 Conn. Ave. N.W., Ste. 1110
c/o CT Corporation System                   Washington, D.C. 20036
1025 Vermont Ave. N.W.
Washington, D.C. 20005

LaSalle Bank N.A.
135 S. LaSalle Street
Chicago, IL 60603
            Re:   Employer Liability -- Arkansas General Industries, Inc. Hourly-Wage
                  Employees Group Pension Plan

Dear Sir(s)/Madam(s):

        By this letter, Pension Benefit Guaranty Corporation ("PBGC") notifies the
controlled group of Arkansas General Industries, Inc., nka AGI Oldco, Inc. ("AGI") of
PBGC's initial determination of the liability resulting from the termination of the
Arkansas General Industries, Inc. Hourly-Wage Employees Group Pension Plan (the
"Plan") with unfunded benefit liabilities, and requests payment thereof.

        AGI was the contributing sponsor of the Plan. By a September 29, 2003, order
of the U.S. District Court for the Eastern District of Arkansas, the Plan was terminated
under 29 U.S.C. § 1342(c), with a termination date of February 19, 2002.

        Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA")
imposes joint and several liability upon the contributing sponsor of a single-employer
plan, and all members of that sponsor's controlled group, upon termination of the plan
under 29 U.S.C. § 1342. ERISA § 4062(a), 29 U.S.C. § 1362(a). Under 29 U.S.C. §
1301(a)(14), a "controlled group" is defined as all persons under common control as
determined under PBGC regulations that are coextensive with Treasury regulations
under Internal Revenue Code § 414(b) and (c). See 29 C.F.R. §§ 4001.2, 4001.3.

        PBGC has determined that as of the Plan's termination date, 100% of AGI's
stock was owned by LaSalle Bank, N.A. ("LaSalle"). AGI thus was a member of a

# EXHIBIT 3

2008 - 3658
4-29-08

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

James P. McElligott
Direct: 804-775-4329

RECEIVED BY PBGC

McGuireWOODS APR 1 AM 10 29

jmcelligott@mcguirewoods.com
Direct Fax: 804-698-2111

APPEALS DIVISION

March 31, 2008

DISCLOSURE DIVISION    RECEIVED PBGC

***VIA FACSIMILE (202) 326-4112; EMAIL; OVERNIGHT COURIER AND
REGULAR MAIL***
Merrill D. Boone, Staff Attorney
Donna Maddox, Manager PBGC
Trusteeship Processing Division 4
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005-4026

*Case No. 19724100: Arkansas General Industries, Inc.,
Hourly-Wage Employees Group Pension Plan,
Administrative Appeal and Lawsuit Filed by PBGC in U.S. District Court*

Dear Ms. Maddox and Mr. Boone:

We represent LaSalle Bank National Association and LaSalle Business Credit, LLC (collectively "LaSalle") in connection with the above referenced matter and specifically Ms. Maddox' February 15, 2008 letter, which LaSalle received on or after Monday February 18, 2008. On behalf of LaSalle, we dispute and object to PBGC's determination that LaSalle Bank, N.A. owned 100% of the stock of Arkansas General Industries, Inc. ("AGI"), that LaSalle or any of the entities addressed in Ms. Maddox' February 15, 2008 letter is in a controlled group with AGI,[1] or that LaSalle or any of the entities addressed in Ms. Maddox' February 15, 2008 letter have any liability for the unfunded benefit liabilities of the Arkansas General Industries, Inc. Hourly-Wage Employees Group Pension Plan ("the AGI Pension Plan."). LaSalle and other entities were at all times a creditor and acting solely as a creditor, not an owner. This is shown by documents previously submitted by LaSalle to the PBGC.

Moreover, PBGC has unreasonably delayed in making its initial determination of liability thereby prejudicing LaSalle and the other entities. In addition, PBGC filed suit against LaSalle and other alleged "controlled group" entities on February 19, 2008 - two business days after making its initial determination of liability – in the U.S. District Court for the District of Columbia, Case 1:08-cv-00271, seeking the full amount allegedly determined in its "initial determination" of February 15, 2008. The PBGC's lawsuit has

---

[1] We do not presently represent any of the entities addressed in Ms. Maddox February 15, 2008 other than LaSalle, but LaSalle disputes that *any* of those entities was ever in a controlled group with AGI. On information and belief, Standard Financial Corporation has never had any affiliation with LaSalle.

Merrill D. Boone
March 31, 2008
Page 2

thus rendered any administrative appeal of this "initial determination" futile and illusory, and denied LaSalle and the other entities due process, administrative process, and rights otherwise due under Title IV of the Employee Retirement Income Securities Act, 29 U.S.C. §§ 1301 through 1461, as well as other rights guaranteed by law.

Because of PBGC's actions, LaSalle insists on its right to seek *de novo* review by the U.S. District Court of the District of Columbia of all actions and determinations by the PBGC. For the above reasons and for the purpose of avoiding waiver of any its rights, LaSalle appeals to the PBGC Appeals Board under 29 C.F.R. §§ 4003.1, *et seq.* *under protest* and without prejudice to litigate all these matters at this time and obtain full *de novo* review by the U.S. District Court of all PBGC actions and determinations.

LaSalle requests timely production of all documents relied upon or considered by the PBGC in making its initial determination with respect to liability, controlled group liability, calculation of unfunded benefit liability, and all other determinations set forth in Ms. Maddox' February 15, 2008 letter, including, without limitation, documents previously produced by LaSalle or otherwise obtained by the PBGC, PBGC work papers and internal memoranda, legal authority of any kind relied upon by the PBGC, witness statements, and other documents relied on by the PBGC.

Very truly yours,

James P. McElligott, Jr.

cc:    PBGC Appeals Board
       Marta A. Stein, Esq.

# EXHIBIT 4

<u>Federal Express</u>

FOIA 2008-3658

May 14, 2008

James P. McElligott, Jr., Esq.
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219

      RE:  Arkansas General Industries, Inc. Hourly Wage Employees Group
           Pension Plan
           PBGC Case Number: 19724100

Dear Mr. McElligott:

This is in response to your Freedom of Information Act request dated March 12, 2008, concerning the above captioned plan.  Pursuant to your request, and authorization to incur fees up to $700.00, for processing this request, I am making a partial release of documents responsive to your request.   As of the date of this letter PBGC has expended 18 hours of search/review time and provided you with 929 pages of documents.  Therefore, charges incurred to date for search/review are approximately $288.00 and copying fees are approximately $139.35 for a total of $427.35.

Please note that while preparing this release, we have determined that some documents were deemed non-disclosable in part.  Our rationale for withholding certain material will be explained in our final determination letter, and you will be given appeal rights at that time.  A Statement of Charges will also be included in our final determination, it will outline search/review fees.

We are still in the process of collecting and reviewing additional documents relating to your FOIA request.  If you have any questions in the interim, please call me at (202) 326-4040.

Sincerely,

E. William FitzGerald
Disclosure Officer

Enclosures

# EXHIBIT 5

FOIA 2008-3658

May 22, 2008

James P. McElligott, Jr., Esq.
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219

      RE:  Arkansas General Industries, Inc. Hourly Wage Employees Group
               Pension Plan
               PBGC Case Number: 19724100

Dear Mr. McElligott:

This is a second release in response to your Freedom of Information Act request
regarding the above-referenced subject.  Pursuant to that request we have previously
made a partial disclosure of 929 pages of material.  With this letter, I am providing
another partial disclosure of material consisting of 67 pages of documents responsive to
your request.

As of the date of this letter PBGC has expended 20 hours of search/review time and
provided you with 996 pages of documents.   Therefore, charges incurred to date for
search/review are approximately $320.00 and copying fees are approximately $150.00.
As I informed you in our prior release we will continue to search and review documents
and make additional releases as the documents become available.  Our final letter will
include information on any material withheld, provide appeal rights and enclose a final
Statement of Charges incurred under this request.  If you have any questions in the
interim, please call me at (202) 326-4040.

Sincerely,




E. William FitzGerald
Disclosure Officer

Enclosures

# EXHIBIT 6

<u>FEDERAL EXPRESS</u>

2008-3658

June 10, 2008

James P. McElligott, Jr., Esq.
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219

> RE:  Arkansas General Industries, Inc. Hourly Wage Employees Group
> Pension Plan
> PBGC Case Number: 19724100

Dear Mr. McElligott:

This is the final release of documents in response to your Freedom of Information
Act (FOIA) regarding the above-referenced subject.  Pursuant to your request I
am providing the final release of documents consisting of 114 pages, giving a
grand total of 1,110 pages released under this FOIA request.

It was necessary to withhold a small portion of information in these records. Two
applicable exemptions of the FOIA were relied upon.

The first exemption, 5 U.S.C. § 552(b)(5), deals with internal documents:
inter-agency or intra-agency memoranda or letters consisting of judgments,
opinions, advice or recommendations which would not be available by law to a
party other than an agency in litigation with the Pension Benefit Guaranty
Corporation (PBGC) and as such are not required to be disclosed under 5 U.S.C.
§ 552(b)(5).  Under this exemption a small portion of three pages of e-mails was
withheld.  I believe the disclosure of this material would not further the public
interest at this time and would impede the operations of the PBGC.

Secondly, it was necessary to withhold portions of <u>information on individual plan
participants.</u>  The applicable exemption, 5 U.S.C. § 552(b)(6), exempts from
required public disclosure, "personnel and medical files and similar files the
disclosure of which would constitute a clearly unwarranted invasion of personal
privacy."  The records you have requested contain "similar files" within the
meaning of the above-cited statutory language and the Pension Benefit Guaranty
Corporation's (PBGC) implementing regulation (29 C.F.R. § 4901.21(b)(4)).
Disclosure would constitute a clearly unwarranted invasion of personal privacy.

James P. McElligott, Jr., Esq.                              Page Two

PBGC's regulation on the examination and copying of records provides at 29 C.F.R. §4901.15 that an applicant whose request for a record or portion thereof has been denied may file an appeal within 30 days from the date of the denial, or, as in this case (partial denial), within 30 days from the date you receive the disclosable material. Your appeal should be in writing and should state the grounds for an appeal, including any supporting statements or arguments. Please address your appeal to the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Washington, D.C. 20005. To expedite processing, each appeal should clearly indicate on the envelope and on the document the following: FOIA Appeal.

Please note we have provided you the best copy available of the documents located in PBGC's files. A Statement of Charges outlining the fees associated with your request is attached. Please send a copy of the statement along with your payment. I hope these documents prove beneficial to you.

Sincerely,


E. William FitzGerald
Disclosure Officer

Enclosures

# EXHIBIT 7



**PBGC** Pension Benefit Guaranty Corporation
Protecting America's Pensions    1200 K Street, N.W., Washington, D.C. 20005-4026
June 13, 2008

James P. McElligott, Esq.
McGuire Woods, LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030

Re: Appeal No. 2008-0258; Arkansas General Industries, Inc., Hourly-Wage Employees
Group Pension Plan (PBGC Case No. 19724100)

Dear Mr. McElligott:

By letter dated March 31, 2008, you filed an appeal on behalf of LaSalle Bank
National Association and LaSalle Business Credit, LLC (collectively "LaSalle") with
respect to the Pension Benefit Guaranty Corporation's ("PBGC") initial determination
dated February 15, 2008. The Appeals Board has accepted your filing as a timely-filed
appeal.

Your March 31, 2008 letter further requested the production of documents related
to PBGC's initial determination. Shortly after it received your letter, the Appeals Board
notified PBGC's Disclosure Officer of your document production request. On June 10,
2008, the Disclosure Officer completed his release of 1,110 pages of documents to you
under the Freedom of Information Act.

Your March 31, 2008 letter states that you are filing your appeal of PBGC's
determination "under protest and without prejudice to litigate all these matters at this
time and obtain full de novo review by the U.S. District Court of all PBGC actions and
determinations." PBGC's Administrative Review Regulation provides, however, that
LaSalle exhaust its administrative remedies by filing an appeal with the Appeals Board.
29 C.F.R. § 4003.7.

PBGC's regulation, at 29 C.F.R. § 4003.54, which sets forth the contents of an
appeal, provides (among other things) that an appeal "contain a statement of the
grounds upon which it is brought and the relief sought" and "reference all pertinent
information already in the possession of PBGC and include any additional information
believed to be relevant." In your March 31, 2008 letter, you: (1) disputed that LaSalle
owned 100% of the stock of Arkansas General Industries, Inc. ("AGI"); (2) disputed that
LaSalle or any of the entitles addressed in PBGC's determination is in a controlled
group with AGI; (3) stated that LaSalle and the other entities "were at all times a creditor

- 2 -

and acting solely as a creditor, not an owner"; and (4) stated that your claims are supported "by documents previously submitted by LaSalle to the PBGC." Your letter, however, did not specifically identify any documents, facts or legal authority that are relevant to your claims.

Under 29 C.F.R. § 4003.58, the Appeals Board "may request the submission of any information ... it considers necessary to resolve a matter before it or enter any order it considers necessary for or appropriate to the disposition of any matter before it." Pursuant to this provision, the Appeals Board orders that LaSalle file a brief with the Appeals Board setting forth in detail the basis for its appeal and the relevant facts, documentary evidence, and legal authority. This brief must be filed not later than July 18, 2008.

If you have any questions, please feel free to contact me at 202-326-4090, extension 3131.

Sincerely yours,

William F. Condron, Jr.
Manager, Appeals Board


Copy Furnished:
Office of the Chief Counsel

# EXHIBIT 8

Case Number: 19724100

To: Donna Maddox, Division Manager, TPD-4
Thru: Robbin Gilford, Team Leader, TPD-4 РG
From: Alecia Witherspoon, Actuary, TPD-4

Date: 4·14·06
Signature: [signature] for
D. Maddox

Actuarial Case Memo for: AW
Arkansas Gen'l Ind. Inc. Hrly Wage Ee's Group PP
Case Number: 19724100
Date of Plan Termination: February 19, 2002
Valuation Interest Rates: Lump Sum: 4.75%; Annuity: 5.8% for 25 years, 4.25% thereafter.

TPD-4 reviewed and accepted Bolton Partners, Inc.'s valuation of this PBGC-trusteed pension plan in ACT. Unless this memo states otherwise, the valuation relied on audited plan and participant data. The present values of benefits as of the Date of Plan Termination (DOPT) are:

| (1) Number of Participants | (2) Group | (3) Present Value of Title IV Benefits at DOPT | (4) Present Value of Unfunded Non-Guaranteed Benefits | (5) Present Value of Total Benefit Liabilities (3) + (4) | (6) Present Value of 4022(c) Benefits | (7) Present Value of Termination Benefits (3) + (6) |
|---|---|---|---|---|---|---|
| 370 | Retirees and Beneficiaries | $4,960,311 | $173,872 | $5,134,183 | $13,673 | $4,973,984 |
| 504 | Separated Vesteds | $3,442,539 | $2,439 | $3,444,978 | $192 | $3,442,731 |
| 98 | Active Vesteds | $996,135 | $20,953 | $1,017,088 | $1,644 | $997,779 |
| 45 | Active Non-Vesteds | $0 | $51,975 | $51,975 | $4,082 | $4,082 |
| 1,017 | TOTAL | $9,398,985 | $249,239 | $9,648,224 | $19,591 | $9,418,576 |

| | | |
|---|---|---|
| A: Present Value of Title IV Benefits | | $9,398,985 |
| B: Assets Available for Allocation | | $8,909,655 |
| C: Unfunded Guaranteed Benefits (UGB) | (A – B) | $489,330 |
| D: Unfunded Non-Guaranteed Benefits (UNGBs) | | $249,239 |
| E: Unfunded Benefit Liabilities (UBL) | (C + D) | $738,569 |
| F: Small Plan Average Recovery Ratio (SPARR) | | 7.86% |
| G: 4022(c) Amount | (D x F) + $1 | $19,591 |
| H: Present Value of Termination Benefits | (A + G) | $9,418,576 |

Case Number: 19724100

## 1. Relevant Dates/Termination Information

Notice of Determination (NOD): 02/13/2003
Notice of Intent to Terminate (NOIT): N/A
Proposed DOPT contained in NOIT: N/A
Date of Trusteeship: 09/29/2003
Recoupment/Recovery Start Date: 02/13/2003

The plan administrator did not issue a NOIT in this case. Accordingly, the first date on which overpayments are subject to recoupment/recovery is February 13, 2003, the date of the NOD.

## 2. Participant Count Reconciliation

The participant count in this report does not agree with the participant count Tonya Wilson reported in the Participant Data Audit (PDA), dated September 30, 2004.

| Participant Type | PDA | Original Database | Adjustments | Final Count |
|---|---|---|---|---|
| Retirees/Beneficiaries | 376 | 370 | | 370 |
| Separated Vesteds | 496 | 499 | 5 | 504 |
| Active Vesteds | 102 | 102 | (4) | 98 |
| Non-Vesteds | 133 | 132 | (87) | 45 |
| **TOTAL** | **1107** | **1103** | **(86)** | **1,017** |

**Separated Vesteds**

499    Count in Original Database

| (b)6-Personal Privacy |
|---|

-1      [            ]. Under the provisions of the 1976 Forrest City plan, a participant who has at least 15 years of service and who is at least age 60 at his time of death is eligible for a pre-retirement death benefit. Because [            ] did not have at least 15 years of service, nor was he at least age 60 at his time of death, [            ] is not eligible for a death benefit. Because he was deceased as of DOPT and his spouse was not eligible for a benefit, we removed him from the valuation.

| |
|---|
| (b)6 -Personal Privacy - 6 Lines Removed |

+16     were included in the database as separated non-vested participants. We determined that they were vested, and we reclassified them as separated vested participants.



Case Number: 19724100



-16

(b)6 -Personal Privacy - 15 Lines Removed

-1

+5

---

45      Final Non-Vested Count

## 3. Pre-DOPT Retirees and Beneficiaries/Pre-Termination Plan Liability

There are 364 pre-DOPT retirees and 6 pre-DOPT beneficiaries in this plan. There are 23 participants who retired within one year of DOPT. All of them had benefits that were within the PBGC tolerance limits.

183 of the pre-DOPT retirees were eligible to receive a lump sum death benefit, which the PBGC does not guarantee. Their monthly benefits were increased by the 4022(c) amount.

## 4. Plan Documents

| Document Description | Effective Date | Adoption Date | Document Abstracted? | Phase-in | Will Phase-In Cut Benefits? |
|---|---|---|---|---|---|
| Bald Knob Original Plan Document | 01/01/1972 | 01/01/1972 | No | No | N/A |
| Bald Knob Restatement | 01/01/1976 | 03/14/1977 | No | No | N/A |
| Bald Knob Restatement | 01/01/1985 | 06/03/1986 | No | No | N/A |
| Bald Knob Restatement | 01/01/1985 | 01/15/1990 | No | No | N/A |
| Bald Knob Restatement | 01/01/1989 | 12/22/1994 | Yes | No | N/A |
| Bald Knob Amendment | 01/01/1989 | 06/27/1995 | No | No | N/A |
| Bald Knob Amendment | 12/31/1999 | 12/31/1999 | Yes | Yes | No |
| Bellville Original Plan Document | 12/31/1957 | 12/26/1957 | No | No | N/A |

Case Number: 19724100

| Document Description | Effective Date | Adoption Date | Document Abstracted? | Phase-in | Will Phase-In Cut Benefits? |
|---|---|---|---|---|---|
| | | | | | |

(b)6 -Personal Privacy -  22 Lines Removed

## 5. Interpretations of Note

a. Plan Administrator's Credited Service and Accrued Monthly Benefit

Credited service is based on hours worked in each calendar year. For most participants, the hours data is not available for years before 1992. In the valuation, we used the credited service as of 01/01/1993 calculated by the prior plan administrator if it was available. If it was not available, we estimated hours worked in each calendar year before 01/01/1993 based on 173.33 hours per month worked.

For participants with hours data after 01/01/1993, we calculated their credited service after 01/01/1993 based on their hours data. If the hours data was not available, we used the credited service calculated by the plan administrator when it was available, and estimated hours based on 173.33 hours per month worked otherwise. We accepted the plan administrator's accrued monthly benefit when it was available for those participants who had breaks-in-service or dates of transfer.

### b. Plan Administrator's Vesting Service

Vesting service is based on hours worked in each calendar year. For most participants, the hours data is not available for years before 1992. In the valuation, we used the vesting service calculated by the prior plan administrator if it was available for participants with no hours data. If it was not available, we estimated hours worked in each calendar year before 01/01/1992 based on 173.33 hours per month worked.

### c. Benefit Form Conversion Factors

The plan provides a table containing benefit form conversion factors from a straight life annuity to a joint and 50% survivor annuity. The plan contains factors for participants aged 55-65 and beneficiaries aged 40-72. The plan states that the benefit form conversion factor for an age combination not shown in the table should be calculated using the same actuarial assumptions used to create the table. However, the plan does not state the assumptions used to create the table.

We attempted to match the factors, but we were not able to match them exactly. The best match was using the TPF&C 1971 mortality table with 4.15% interest. Using this basis, we matched 24 out of 363 factors exactly and were off by an average of 0.0006. The largest difference in factors was 0.0044.

In the valuation, we used the plan's factors when the participant's age and the beneficiary's age were shown on the table. Otherwise, we used actuarial equivalence with the TPF&C 1971 mortality table and 4.15% interest.

### d. Early Retirement Factors

The early retirement factors for certain groups of participants defined in the plan documents include factors that differ based on the age of the participant at retirement. For participants employed at the Bald Knob, Forrest City, or Heber Springs locations who retire on or after 12/01/1986, the basis of the early retirement factors is .6% per month early from age 65 if the participant is younger than age 62 at retirement and 5/9% per month early from age 65 if the participant is at least age 62 at retirement.

### e. Late Retirement Factors

The plan does not provide late retirement factors, nor does it define actuarial equivalence. Rather than use our conjectured basis for actuarial equivalence (see Section 5.c above), we used the PBGC's late retirement factors in the valuation.

Case Number: 19724100

f. Medicare B Supplement

The plan offered a Medicare B supplement for participants employed at the Bellview, OH location. The supplement is described in section 5.5 of the 1989 plan. The plan states that the supplement is payable only to "specified classes of payees" whose benefit type is a "Normal Retirement Benefit." We interpret this to mean that the supplement is only payable to participants who retire from active service on or after their normal retirement date, and that deferred vested participants are not eligible to receive the supplement. There are two retirees currently receiving the supplement. Both of these retirees worked past their normal retirement dates. No other participants are eligible to receive the supplement. Please see Section 2 of the Guidance for the Pension Analyst for more information.

## 6. Accrued-at-Normal Limitation

The plan does not provide any benefits that exceed the Accrued-at-Normal Limitation.

## 7. Maximum Guaranteeable Benefit

No participant's benefit exceeds the Maximum Guaranteeable Benefit. There are 23 participants who are also participants in other PBGC-administered plans. None of their benefits exceed the Aggregate Maximum Guaranteeable Benefit.

## 8. Phase-In Limitation

No benefit increase is subject to the phase-in limitation.

## 9. Substantial Owners

The auditor did not identify any substantial owners.

## 10. Asset Allocation

The plan had no liabilities in PC1 and PC2 because it did not permit employee contributions. No PC3 benefits exceeded PC4 benefits and there were no substantial owners. We did not perform an allocation of assets since assets did not cover the PC4 liabilities.

## 11. 4022(c) Allocation:

The total UNGB was $249,239. We valued the entire amount in PC6 as a result of the lump sum death benefit liability and the active non-vested liability.

The PBGC issued the NOD on 2/13/2003. Since this occurred after 12/17/1990, and UNGB were less than $20 million, we consider this a SPARR Plan. The applicable SPARR is 7.86%.

Case Number: 19724100

The 4022(c) amount is $19,591. We used the entire amount to provide benefits for participants eligible for the lump sum death benefit and active non-vested participants.

## 12. Normal and Early Retirement Dates

The plan's Normal Retirement Date is the first of the month next following the participant's 65th birthday.

If a participant was employed at Bellville or Dec-Rite, he is eligible for Early Retirement on the first day of the month next following the later of his 60th birthday and the completion of 10 years of credited service.

If a participant was employed at Heber Springs, and terminated employment before 12/01/1985, he is eligible for Early Retirement on the first day of the month next following the later of his 60th birthday and the completion of 10 years of credited service. If a participant was employed at Heber Springs, and terminated employment on or after 12/01/1985, he is eligible for Early Retirement on the first day of the month next following the later of his 55th birthday and the completion of 10 years of credited service.

If a participant was employed at Marysville, and terminated employment before 12/01/1986, he is eligible for Early Retirement on the first day of the month next following the later of his 60th birthday and the completion of 10 years of credited service. If a participant was employed at Marysville, and terminated employment on or after 12/01/1986, he is eligible for Early Retirement on the first day of the month next following the later of his 55th birthday and the completion of 10 years of credited service.

If a participant was employed at Bald Knob or Forrest City, and terminated employment before 12/01/1982, he is eligible for Early Retirement on the first day of the month next following the later of his 60th birthday and the completion of 15 years of credited service. If a participant was employed at Bald Knob or Forrest City, and terminated employment before 12/01/1985 and on or after 12/01/1982, he is eligible for Early Retirement on the first day of the month next following the later of his 60th birthday and the completion of 10 years of credited service. If a participant was employed at Bald Knob or Forrest City, and terminated employment on or after 12/01/1985, he is eligible for Early Retirement on the first day of the month next following the later of his 55th birthday and the completion of 10 years of credited service.

## 13. Expected Retirement Age

The company ceased operations on 02/19/2002. We applied Table 2C to determine the Expected Retirement Age (XRA) for those participants who terminated employment one year or more before DOPT. The expected retirement age for participants who terminated employment within one year of DOPT was their earliest retirement age.

Case Number: 19724100

## 14. Valuation Form of Annuity

The automatic form of annuity for single participants is a Straight Life Annuity. The automatic form of annuity for married participants is a Joint and 50% Survivor (J&50%S) Annuity. When data was unavailable, we assumed that participants were married and that females were 4 years younger than their male spouses. For the purposes of valuing lump sum amounts, when data was unavailable, we assumed that participants were married and that spouses were the same age.

## 15. Vesting

The plan provides a 10-year cliff vesting schedule for participants who terminated employment before 01/01/1989 and a 5-year cliff vesting schedule for participants who terminated employment on or after 01/01/1989. The plan calculated years of vesting service based on hours worked in each calendar year.

## 16. Offsets to Plan Benefits

The auditor did not identify any offsets for benefits from other plans or purchased annuities.

## 17. Retirement Equity Act/Death Benefits

The plan provided a qualified pre-retirement survivor annuity (QPSA) equal to the survivor portion of a J&50%S annuity, payable at the later of the date of death or the early retirement age.

At the Bald Knob, Forrest City, and Marysville locations, the plan charged for pre-retirement survivor annuity coverage prior to 01/01/1983, 01/01/1985, and 01/01/1989, respectively. We have no QPSA election data, nor do we have evidence that the plan administrator applied the charge when it was in place, so we did not apply the charge. Because there are no future charges, we valued the QPSA for all married participants.

The plan provided a single sum death benefit for retired participants who were eligible for immediate retirement when they terminated employment. The benefit ranges from $1,000 to $5,000, depending on location and date of termination of employment. We valued the lump sum death benefit in PC6 using PBGC annuity mortality tables and select interest rate (5.8%).

## 18. Expense Loading

(1) Number of annuity participants = 1,017
(2) PVPBL without load = $9,359,024
(3) Initial Annuity Interest Rate = 5.8%
(4) p = 1% + [(3) − 7.5%]/10 = .830% = .0083
(5) Amount of Load = $10,000 + [(2) - $200,000] x (4) + [$200 x (1)] = $289,420
(6) Expense percentage = (5)/(2) = .0309 = 3.09%

Case Number: 19724100

### 19. Liability-Weighted Average Age/Liabilities Excluding Expense Loading

**Average Weighted Age Table:**

| (1) Number of Participants | (2) Group | (3) Average ANB at DOPT Weighted by Present Value of Termination Benefits | (4) Average XRA Weighted By Present Value of Termination Benefits |
|---|---|---|---|
| 370 | Retirees and Beneficiaries | 70.0 | -- |
| 504 | Separated Vesteds | 53.7 | 61.2 |
| 98 | Active Vesteds | 59.1 | 61.5 |
| 45 | Non-Vesteds | 49.0 | 65.0 |

**Liabilities Excluding Expense Loading:**

| (1) Number of Participants | (2) Group | (3) Present Value of Title IV Benefits at DOPT | (4) Present Value of Unfunded Non-Guaranteed Benefits | (5) Present Value of Total Benefit Liabilities (3) + (4) | (6) Present Value of 4022(c) Benefits | (7) Present Value of Termination Benefits (3) + (6) |
|---|---|---|---|---|---|---|
| 370 | Retirees and Beneficiaries | $4,811,626 | $168,661 | $4,980,287 | $13,265 | $4,824,891 |
| 504 | Separated Vesteds | $3,339,353 | $2,366 | $3,341,719 | $187 | $3,339,540 |
| 98 | Active Vesteds | $966,277 | $20,325 | $986,602 | $1,598 | $967,875 |
| 45 | Active Non-Vesteds | $0 | $50,416 | $50,416 | $3,962 | $3,962 |
| 1017 | **TOTAL** | $9,117,256 | $241,768 | $9,359,024 | $19,012 | $9,136,268 |

The total LS_TERM for all participants is $8,412,402.

### 20. Data Issues

a. The customer number (CUSNUM) was incorrect in the database for the following participants:

| Name | SSN | Original Database CUSNUM | Valuation CUSNUM |
|---|---|---|---|
| (b)6 -Personal Privacy - 3 Lines Removed | | | |

b. The Social Security number (SSN) was incorrect in the database for the following participant:

| Name | SSN | Original Database SSN | Valuation SSN |
|---|---|---|---|
| (b)6-Personal Privacy | | | |

c. The beneficiary's Social Security number (SSSN) was incorrect in the database for the following participant:

| Name | SSN | Original Database SSSN | Valuation SSSN |
|---|---|---|---|
| (b)6-Personal Privacy | | | |

Case Number: 19724100

d. The ID was incorrect in the database for the following participants:

| Name | SSN | Original Database ID | Valuation ID |
|------|-----|---------------------|--------------|
| (b)6 -Personal Privacy - 4 Lines Removed | | | |

e. The date of retirement (DOR) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database DOR | Valuation DOR |
|------|-----|----------------------|---------------|
| (b)6 -Personal Privacy - 16 Lines Removed | | | |

f. The annuity form at actual retirement date (FORM_CODE_ARD) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database FORM_CODE_ARD | Valuation FORM_CODE_ARD |
|------|-----|-------------------------------|------------------------|
| (b)6 -Personal Privacy - 21Lines Removed | | | |

Page 11 of 25

Case Number: 19724100

| Name | SSN | Original Database FORM_CODE_ARD | Valuation FORM_CODE_ARD |
|------|-----|--------------------------------|-------------------------|
| | | | |

(b)6 -Personal Privacy - 26 Lines Removed

g. The secondary annuitant percent at actual retirement date (SPC_ARD) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database SPC_ARD | Valuation SPC_ARD |
|------|-----|---------------------------|-------------------|
| | | | |

(b)6 -Personal Privacy - 15 Lines Removed

h. The months certain at actual retirement date (MTHS_ARD) was incorrect/missing in the
database for the following participants:

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|------|-----|---------------------------|--------------------|
|      |     |                           |                    |

(b)6 -Personal Privacy - 49 Lines Removed

Case Number: 19724100

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|------|-----|---------------------------|-------------------|
| | | | |

(b)6 -Personal Privacy - 50 Lines Removed

Case Number: 19724100

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|------|-----|---------------------------|---------------------|
|      |     |                           |                     |

(b)6 -Personal Privacy - 50 Lines Removed

Page 15 of 25

Case Number: 19724100

9/5/06/09:55:54 AM

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|------|-----|---------------------------|--------------------|
|      |     |                           |                    |

(b)6 -Personal Privacy - 51 Lines Removed

Case Number: 19724100

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|------|-----|----------------------------|--------------------|
|      |     |                            |                    |

(b)6 -Personal Privacy - 51 Lines Removed

9/5/06/09:55:54 AM

Case Number: 19724100

| Name | SSN | Original Database MTHS_ARD | Valuation MTHS_ARD |
|---|---|---|---|
| (b)6 -Personal Privacy - 16 Lines Removed | | | |

i. The primary level-life pay amount (LEV_MB_ARD) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database LEV_MB_ARD | Valuation LEV_MB_ARD |
|---|---|---|---|
| (b)6 -Personal Privacy -28 Lines Removed | | | |

Case Number: 19724100

j. The plan administrator's credited service (N030) was incorrect/missing in the database for the following participant:

| Name | SSN | Original Database N030 | Valuation N030 |
|---|---|---|---|
| | | | |
| (b)6 -Personal Privacy - 42 Lines Removed | | | |

k. The plan administrator's credited service at 1/1/1993 (N028) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database N028 | Valuation N028 |
|---|---|---|---|
| (b)6 -Personal Privacy - 3 Lines Removed | | | |

Case Number: 19724100

| Name | SSN | Original Database N028 | Valuation N028 |
|---|---|---|---|
| | | | |

(b)6 -Personal Privacy - 34 Lines Removed

l. The plan administrator's vesting service (VSPA) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database VSPA | Valuation VSPA |
|---|---|---|---|
| | | | |

(b)6 -Personal Privacy - 8 Lines Removed

m. The location code (T001) was incorrect/missing in the database for the following participants:

| Name | SSN | Original Database T001 | Valuation T001 |
|---|---|---|---|
| | | | |

(b)6 -Personal Privacy - 2 Lines Removed

Case Number: 19724100

| Name | SSN | Original Database T001 | Valuation T001 |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 2 Lines Removed | | | |

n. The date of birth (DOB) was incorrect in the database for the following participants:

| Name | SSN | Original Database DOB | Valuation DOB |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 2 Lines Removed | | | |

o. The beneficiary's date of birth (SDOB) was incorrect in the database for the following participants:

| Name | SSN | Original Database SDOB | Valuation SDOB |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 6 Lines Removed | | | |

p. The date of hire (DOH) was incorrect in the database for the following participants:

| Name | SSN | Original Database DOH | Valuation DOH |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 6 Lines Removed | | | |

q. The date of termination of employment (DOTE) was incorrect in the database for the following participants:

| Name | SSN | Original Database DOTE | Valuation DOTE |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 18 Lines Removed | | | |

Case Number: 19724100

r. The break-in-service date (D001) was incorrect in the database for the following participant:

| Name | SSN | Original Database D001 | Valuation D001 |
|------|-----|------------------------|----------------|
| (b)6-Personal Privacy | | | |

s. The rehire date (D002) was incorrect in the database for the following participant:

| Name | SSN | Original Database D002 | Valuation D002 |
|------|-----|------------------------|----------------|
| (b)6-Personal Privacy | | | |

t. The date of transfer to IGC (D008) was missing in the database for the following participants:

| Name | SSN | Original Database D008 | Valuation D008 |
|------|-----|------------------------|----------------|
| (b)6 -Personal Privacy - 3 Lines Removed | | | |

u. The hours data was missing/incorrect in the database for the following participant:

| Name | SSN | Field | Original Database | Valuation |
|------|-----|-------|-------------------|-----------|
| (b)6 -Personal Privacy - 8 Lines Removed | | | | |

## 21. Additional Comments

a. According to the PDA, the 14 participants listed below are also participants in the Industrial General Corporation (IGC) plan (PBGC plan number 17158100). Their salaried benefits should be paid by the IGC plan, and their hourly benefits should be paid by this plan. It appears that their entire benefit is erroneously being paid by the IGC plan. Their IGC benefits should be revised so that they reflect only the benefit earned under the IGC plan.

| Name | SSN |
|------|-----|
| (b)6 -Personal Privacy - 14 Lines Removed | |

Case Number: 19724100

b. In an Action of the Board of Directors of the Industrial General Corporation dated 12/13/1991, the plan froze benefit accruals on 12/31/1991 for employees at the Dec-Rite location. The participants who were affected by the freeze had plan administrator calculations that stopped accruals at 12/31/1991.

Case Number: 19724100

| Name | SSN | Years of Vesting Service |
|------|-----|--------------------------|
| | | |

(b)6 -Personal Privacy - 31 Lines Removed

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 1:08-cv-00271 |
| | ) | |
| LA SALLE BANK N.A., | ) | |
| | ) | |
| LASALLE BUSINESS CREDIT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER TO STAY PROCEEDINGS</u>

The Court having reviewed the Motion to Stay Proceedings, filed by Plaintiff Pension

Benefit Guaranty Corporation ("PBGC"), it is, by the Court,

ORDERED: Plaintiff PBGC's Motion to Stay Proceedings is GRANTED, and it is, by the

Court,

FURTHER ORDERED: All proceedings in this action shall be stayed from the date of

this Order through December 31, 2008, and it is, by the Court,

FURTHER ORDERED: The running of any and all time periods applicable to this action

shall be tolled during the stay of this action.


Dated: _____          _____
                                       UNITED STATES DISTRICT JUDGE

Attorney to be notified of entry of order under LCvR 7(k):

James P. McElligott, Jr.
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Attorney and Agent for Service of Process for Defendants
LA SALLE BANK N.A. and LASALLE BUSINESS CREDIT, LLC

Merrill Boone
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, N.W., Suite 340
Washington, D.C.  20005
Attorney for the PBGC