IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PENSION BENEFIT GUARANTY CORPORATION** : : : | |
| Plaintiff, : : | |
| v. : : | Case: 1:08-cv-00271-EGS |
| **LA SALLE BANK N.A., et al.** : : | |
| Defendants. : | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR STAY

Defendants LaSalle Bank N.A. and LaSalle Business Credit, LLC (collectively "LaSalle Defendants") oppose the Plaintiff Pension Benefit Guaranty Corporation's ("PBGC" or "Plaintiff") motion to stay the proceedings in a lawsuit that the PBGC itself initiated by suing the LaSalle Defendants on February 19, 2008 and as to which the PBGC filed an amended complaint on or about May 6, 2008.

The case presents a simple issue that the parties could easily settle through ADR or, if not settled, present to the Court on a stipulated record. LaSalle Bank, N.A. has been a secured creditor of Arkansas General Industries, Inc. ("AGI"). The key issue in this case is the PBGC's legal conclusion that LaSalle Bank, N.A. "directly owned" 100% of the stock of AGI and is therefore in a "controlled group" with AGI, making the LaSalle Defendants liable for the unfunded pension liabilities of its debtor AGI. In fact, LaSalle Bank, N.A. was never an owner of its debtor AGI; at all times LaSalle Bank, N.A. acted as a secured creditor, not an owner. Accordingly, AGI has never been part of the LaSalle Defendants "controlled group." *See Central States, Southeast and Southwest Areas*

*Pension Fund v. Ditello*, 974 F.2d 887, 891-92 (7th Cir. 1992) ("[a secured creditor] has no more 'control' over the proprietorship than would any other secured creditor."); *see also Brown v. Astro Holdings, Inc.,* No. 04-5031, 2005 U.S. Dist. LEXIS 18406 (E.D. Penn., August 29, 2005) (IRS common control regulations should be construed literally and courts may not impose other theories of liability to put an entity in the control group).

The Court should deny the motion to stay for the following reasons:

1) By filing suit, Plaintiff has waived exhaustion and prevented meaningful exhaustion by the LaSalle Defendants.

2) The Plaintiff has filed this motion for stay without first attempting to narrow the issues or comply with the Local Rules and the pretrial order.

### Statement of the Case

Plaintiff summarized its position nearly six years ago in an August 22, 2002 letter by the PBGC's lawyer asserting that AGI was in the "controlled group" of LaSalle Bank, N.A. because the stock of AGI was assigned for the benefit of LaSalle Bank, N.A. Exh. 1, attached hereto.

Two business days after finally making its February 15, 2008 determination that LaSalle Bank, N.A.'s controlled group is liable for the unfunded liability of AGI's pension, the PBGC sued the LaSalle Defendants and others for the unfunded benefit liabilities of AGI's pension plan determined by Plaintiff. The PBGC based its decision on legal advice (from the same PBGC attorneys who prosecute this lawsuit) regarding "the common law of resulting trusts." Exh. 2, attached hereto (PBGC Memorandum of February 15, 2008) at page 2. The PBGC's determination relies totally on its lawyers' interpretations of the common law of trusts and other common law principles, citing at

one point *Black's Law Dictionary*, without discussing contrary authority submitted by LaSalle. Exh. 2, attached hereto, at page 3.

On March 31, 2008, the LaSalle Defendants objected to the PBGC's February 15, 2008 determination because LaSalle was a creditor, not an owner, and appealed administratively under protest because "PBGC has unreasonably delayed in making its initial determination of liability thereby prejudicing LaSalle and [i]n addition, [the PBGC's lawsuit has] rendered any administrative appeal of this 'initial determination' futile and illusory." Plaintiff's Exhibit 3 (March 31, 2008 Letter from McGuireWoods to the PBGC).

On May 9, 2008, the LaSalle Defendants accepted service of the Amended Complaint, in which Plaintiff dropped all other defendants in exchange for a promise that the LaSalle Defendants would not challenge venue. Exh. 3 attached hereto (Letter of April 1, 2008 and Emails of April 11, 2008). The LaSalle Defendants timely answered and are reviewing documents produced in response to their request.

The Court's Initial Pretrial Order issued May 30, 2008. The Local Rule 16.3(c) conference is scheduled for July 2, 2008. Plaintiff's motion to stay was filed June 20, 2008 after a perfunctory phone call to LaSalle counsel and over the objections of LaSalle.

<strong><u>Argument</u></strong>

### I. By filing suit, Plaintiff has waived exhaustion and prevented meaningful exhaustion by the LaSalle Defendants.

No stay is needed in this case. There are no pending discovery requests or disputes, no pending motions (other than the PBGC's own motion to stay), nothing that requires either party to take any action other than comply with the May 30 Pretrial Order.

As of this writing, the parties have not met for the Local Rule 16.3(c) conference and their Report on the Rule 16.3(c) Conference has not been prepared.

Because the PBGC has sued the LaSalle Defendants, it is improper for the Plaintiff to seek further delay through this motion for stay. As the Supreme Court recognized in *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50-51 (1938), exhaustion is a defense that the agency may raise if suit is filed *against the agency prematurely*. Thus, in *Boivin v. U.S. Airways, Inc.,* 446 F.3d 148 (D.C. Cir. 2006), the Court of Appeals dismissed a lawsuit *against* the PBGC because the plaintiffs had filed suit "without waiting for the PBGC to complete its final determinations." 446 F.3d at 151.

The case before the Court is completely unlike *Boivin*, where the PBGC was the defendant, not the plaintiff. Nothing in *Boivin* suggests that the PBGC should be able to use exhaustion as a sword against the LaSalle Defendants, as opposed to a shield against a premature lawsuit brought against the PBGC. The PBGC elected to file suit and ought not to abuse the processes of this Court by filing suit and then seeking an immediate stay.

*Boivin* is also distinguishable because the Court of Appeals determined that the case turned on interpretation of the PBGC's regulations, which issue is not present here. The key question in this case is whether LaSalle Bank, N.A. was acting as a creditor or as a "direct owner" of AGI stock. This Court, not the PBGC, is the ultimate reviewer of that legal issue. The PBGC cannot argue that "complex issues" are involved in this case, when the parties have not yet had their Local Rule 16.3(c) conference. At a minimum, the Court should deny a stay until the parties identify the issues that must be addressed in this lawsuit.

In *Boivin,* the Court of Appeals recognized – and the PBGC conceded – that unreasonable delay by the PBGC was a reason to excuse exhaustion even where the PBGC is the defendant:

> We stress that this resolution does not sentence the plaintiffs to an interminable wait for their final benefit determinations. As the Court warned in [*McCarthy v. Madigan*, 503 U.S. 140 (1992)], exhaustion may be excused where "prejudice . . . results . . . from an unreasonable or indefinite timeframe for administrative action." 503 U.S. at 147. *And the PBGC itself concedes that, if it takes too long to make a final determination, the plaintiffs may bring suit under the Administrative Procedure Act to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).*

446 F.3d at 158 (emphasis added).

Where the PBGC has failed to permit exhaustion of its administrative appeals process under 29 C.F.R. 4003, a district court has discretion to: (1) allow the case to proceed, (2) enter a stay pending the results of the appeals process, or (3) dismiss the case without prejudice. *PBGC v. Carter & Tillery Enterprises*, 133 F.3d 1183 (9th Cir. 1998). In *Carter & Tillery,* defendants moved to dismiss the PBGC's lawsuit because the PBGC had sued defendants before defendants could pursue their PBGC appeal of the PBGC's determination. The Court reversed dismissal of the PBGC's lawsuit and directed that the PBGC's lawsuit be stayed instead of dismissed to avoid a statute of limitations problem. The LaSalle Defendants have not moved this Court to dismiss the PBGC's lawsuit, so no statute of limitations issue is before the Court. We only ask that the court deny any stay and let the parties proceed in accordance with the Court's May 30 Order.

The Supreme Court has applied the waiver exception to excuse exhaustion on several occasions, each of which involved suits *against the agency. See Heckler v. Day*,

5

467 U.S. 104 (1984); *Mathews v. Diaz*, 426 U.S. 67 (1976); *Bowen v. Owens*, 476 U.S. 340 (1986); *Weinberger v. Salfi*, 422 U.S. 749 (1975).

The Court of Appeals held in *Ingram v. Barnhart*, 303 F.3d 890, 894 (8th Cir. 2002) that an agency waived its right to decide an issue because it allowed the claim before it to "languish." The Administrative Procedures Act § 555(b) expressly provides that the agency must proceed "within a reasonable time." "[T]he too frequent torpidity of the agency decision making process can create significant delays to judicial resolutions of important issues." *Richard J. Pierce, Jr., Administrative Law Treatise*, § 15.10, pg. 1031; see also *Smith v. Illinois Bell Telephone Company*, 270 U.S. 587, 591 (1926) (warning of the injustice caused by "long-continued and unreasonable delay" in agency decision-making.). The Supreme Court recognized in *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561 (1989) that the exhaustion defense should not be used to create unacceptable delay in the adjudication of parties' rights. *Id.* 582-587.

In its complaint and amended complaint, the PBGC has represented that final agency action has already taken place in determining the liability of the LaSalle Defendants. *See Association of National Advertisers v. FTC*, 627 F.2d 1151, 1157 (D.C. Cir. 1979) *cert. denied* 447 U.S. 421 (1980), noting that "final agency action" is a prerequisite to filing suit. By virtue of the PBGC's lawsuit, this Court clearly has jurisdiction to consider this matter and by filing suit, the PBGC has confirmed that the matter is ripe for Court enforcement.

The LaSalle Defendants are not required to exhaust an administrative remedy that would be an exercise in futility. *See Skubel v. Fuoroli*, 113 F.3d 330 (2nd Cir. 1997). In this case, any appeal is futile because the PBGC has conclusively determined by its

6

lawsuit *in this case* that the LaSalle Defendants are liable for the pension liabilities of AGI. Nothing in the Complaint, the Amended Complaint, or PBGC regulations suggests that the PBGC Appeals Board can reverse this determination. The PBGC Appeals Board has no authority under the PBGC's regulations to second guess the legal opinion of Plaintiff's Office of Chief Counsel (who represent the Plaintiff in this lawsuit) and no authority to direct the PBGC to dismiss this lawsuit.

>    II.    **Plaintiff filed this motion without attempting to narrow the issues or to comply with the Local Rules and this Court's Pretrial Order.**

The PBGC has not attempted to comply with the Court's May 30 Pretrial Order before filing this motion. The key issue in this case is simple and turns on a legal conclusion that this Court can determine on a stipulated record. While developing the record, the parties can narrow extraneous issues and attempt settlement under the ADR procedures suggested in the Pretrial Order. A stay would delay this useful process.

The Local Rules require a prompt and meaningful conference to avoid unnecessary motions and litigation. Local Rule 16.3(c)(2) requires that, at such conference, the parties discuss "whether some or all of the factual and legal issues can be agreed upon or narrowed." Similarly, Local Rule 7(m) imposes a duty to confer prior to filing non-dispositive motions; this requires not just a phone call, but "a good faith effort to determine" if the motion is opposed and/or to "narrow" the issues in dispute.

By mutual agreement, the parties have already disposed of unnecessary parties and questions of service and venue. LaSalle Defendants have proposed mediation, but Plaintiff has yet to say whether it will agree to mediation and has made no settlement demand. Under the Pretrial Order and the Local Rules, this case can be completely

resolved, or at worse, narrowed sufficiently so as to be efficiently addressed by this Court.

## CONCLUSION

For the above reasons, the Court should deny the Plaintiff's motion to stay.

Respectfully submitted,

/s/ Robert Plotkin
Robert Plotkin
DC Bar No. 160176
McGuireWoods LLP
1050 Connecticut Ave., NW, Suite 1200
Washington, DC  20036
(202) 857-1750 (telephone)
(202) 828-2970 (facsimile)

Dated: July 1, 2008               *Attorney for Defendant La Salle Bank N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2008, a copy of the foregoing Defendants' Opposition to Plaintiff's Motion for Stay was served via electronic filing to the following:

ISRAEL GOLDOWITZ, Chief Counsel
KAREN L. MORRIS,  Deputy Chief Counsel
STEPHANIE L. THOMAS, Asst. Chief Counsel
MERRILL D. BOONE, Attorney
PENSION BENEFIT GUARANTY
  CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, DC  20005-4026
Tel. No. (202) 326-4020, ext. 3656
Fax No. (202) 326-4112
Boone.Merrill@pbgc.gov & efile@pbgc.gov

/s/ Robert Plotkin
Robert Plotkin



**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

VIA TELECOPIER, (312) 782-8416
and FIRST-CLASS MAIL

AUG 22 2002

Neil Adelman, Esq.
Schwartz Cooper Greenberger Krauss
180 North LaSalle Street, Ste. 2700
Chicago, IL 60601

    Re:    Arkansas General Industries, Inc. Hourly-Wage Employees Group Pension Plan ("Plan")

Dear Mr. Adelman:

    I write to follow up on our conversation of July 16, 2002. You inquired then about whether and when PBGC would terminate the Plan. I indicated that PBGC was still analyzing issues raised by the transfer of AGI's stock.

    Based on what we know of the facts, it appears likely that LaSalle Bank National Association ("LaSalle") has been in a controlled group with AGI since February 20, 2001. On that date, 100% of AGI's stock was assigned to Iowa County Wisconsin Corp. ("Iowa Co."), a nominee designated by Schwartz Cooper Greenberg Krauss ("SCGK") that was solely owned by an SCGK attorney. Iowa Co. subsequently assigned the stock to Robert Smoller, another SCGK attorney, who subsequently assigned the stock to RS Holding Company, which was solely owned by Mr. Smoller and incorporated for the purpose of holding the stock. It appears that each of these three assignees has been merely a nominee of LaSalle. Andrew H. Connor's letter enclosing the assignments and other documents describes them as such, and the first assignment states that AGI and its owner are indebted to "Assignee," i.e. LaSalle.

    Whether two corporations are in a controlled group together under Title IV of ERISA is determined by reference to 26 U.S.C. § 1563. ERISA § 4001(a)(14)(B); Treas. Reg. § 1.414(b)-1(a). Two corporations are in a controlled group when 80% or more of the stock of one is "owned directly" by the other. 26 U.S.C. § 1563(a)(1), (d)(1)(A). An IRS General Counsel Memorandum, and a related Private Letter Ruling, indicate that "owned directly" under I.R.C. § 1563(d)(1)(A) should be interpreted by reference to the interpretation of "owns directly" under I.R.C. § 1504(a)(1), which governs whether corporations are "affiliated" such that they may file a consolidated tax return. Gen. Couns. Mem. 39,710 (Sept. 11, 1987); Priv. Ltr. Rul. 88-01-042 (Oct. 13, 1987). When legal title to stock is held by a nominee, the


EXHIBIT
EXH. 1

Neil Adelman, Esq.                                                                Page 2

stock is "owned directly" by the nominator, within the meaning of I.R.C. § 1504(a)(1). Rev. Rul. 70-469, 1970-2 C.B. 179. Thus it appears that since February 20, 2001, the stock of AGI has been owned directly by LaSalle, such that LaSalle has been in a controlled group with AGI.

As you are no doubt aware, if a plan covered by PBGC terminates involuntarily, the members of the plan sponsor's controlled group are jointly and severally liable to PBGC for, *inter alia*, the plan's unfunded benefit liabilities ("UBL") as of its termination date, plus interest thereon. ERISA § 4062(a)(1), (b)(1)(A). PBGC estimates that the Plan's UBL as of February 19, 2002 (the date that AGI ceased operations) would be $1,258,900, assuming that the Plan terminated involuntarily as of that date.

Alternatively, LaSalle might wish to fund the standard termination of the Plan. I believe that PBGC would be willing to delay deciding whether to terminate the Plan involuntarily for a reasonable time to allow LaSalle to consider a standard termination. Since AGI, the Plan Administrator, no longer has any assets or employees, we cannot delay this decision indefinitely.

In the meantime, I expect to request more information from Mr. Connor shortly.

Sincerely,

Merrill Boone

Merrill D. Boone
Attorney
Office of the General Counsel
(202) 326-4020, ext. 3656



**PBGC** Pension Benefit Guaranty Corporation
1200 K Street, N.W., Washington, D.C. 20005-4026

## MEMORANDUM

**TO:** Deena Maddox, Division Manager
Trusteeship Processing Division 4

**THROUGH:** Jeffrey Dorson, Team Leader       FEB 15 2008
Trusteeship Processing Division 4

**FROM:** Tonya R. Wilson, Auditor, TPD

**SUBJECT:** Controlled Group Analysis of
Arkansas General Industries, Inc. (the "Company")
Case Name: Arkansas General Industries, Inc. Hourly-Wage Employees' Pension Plan (the "Plan")
EIN/PN(s): 04-1652440/009
PBGC Case Number(s): 19724100
DOPT(s): 02/19/2002
DOTR(s): 09/29/2003

**PURPOSE:**

The purpose of the audit was to confirm the DISC's (f.k.a. PPD) determination that the sponsor is a part of a parent-subsidiary controlled group of entities as documented in their Preliminary Controlled Group memorandum.

**SOURCES:**

The following sources/documents were consulted:

1. PPD Preliminary Controlled Group Determination – Attachment 1
2. D&B Reports – Attachment 2
3. Letter of June 7, 2002, from Andrew H. Connor to OCC with enclosures – Attachment 3
4. Affidavit of Robert A. Smoller (with cover letter) – Attachment 4
5. "Written Consent to Action" – Attachment 5
6. June-July, 2001 Bill from SCGK to LaSalle – Attachment 6
7. Documents Produced by AGI Oldco – Attachment 7
8. 2005 Subpoena to LaSalle – Attachment 8
9. Robert Smoller's Responses to Schedules A and B (with Cover Letter) – Attachment 9
10. Asset Purchase Agreement – Attachment 10
11. 2/22/02 Letters to PBGC from SCGK – Attachment 11
12. 5/16/02 Letter from Merrill Boone to Neil Adelman – Attachment 12
13. Response to 9/15/06 Supplemental Request for Information to Robert Smoller, AGI Oldco, Inc. and Schwartz Cooper Chartered (with cover letter) – Attachment 13
14. Letter to Merrill Boone from Marta Stein re 2005 Subpoena to LaSalle Bank, N.A. – Attachment 14
15. Letter from C.A. Van Diggelen in Response to Request for Copies of Income Tax Filings of Arkansas General Industries, Inc. (With Merrill Boone's Letter Attached) – Attachment 15
16. August 31, 2006- to Merrill Boone from SCGK – Attachment 16

EXHIBIT
EXH. 2

17. Documents Produced by DMI (with cover letter) – Attachment 17
18. Affiliations Schedule for the ABN AMRO North America Holding Company Tax Return for Calendar Year 2002 with Cover Letter – Attachment 18
19. OCC Executive Summary and Memo to TPD-4 of January 22, 2008 – Attachment 19

**SCOPE:**

The review was performed in accordance with generally accepted auditing standards and accordingly, included such tests of the accounting and pension procedures as were necessary in the circumstances.

**GENERAL & CORPORATE BACKGROUND:**

The Plan sponsor is Arkansas General Industries, Inc., f/k/a Industrial General Corporation ("AGI"), which manufactured electric motors in Bald Knob, AR. The Plan was established effective January 1, 1972. Effective January 1, 2000, AGI's five other pension plans were merged into the Plan. AGI was acquired by Eli S. Jacobs and others on August 30, 1985. AGI filed a Chapter 11 bankruptcy petition on July 28, 1995. Under a plan of reorganization funded by LaSalle Bank National Association ("LaSalle") and incorporating a settlement with PBGC, AGI emerged from bankruptcy on August 30, 1996. AGI's largest pension plan was terminated in a distress termination as of March 31, 1996, and trusteed by PBGC (Case No. 171581-00).

**PROCEDURES:**

Information was obtained through preliminary investigation by DISC (f.k.a. PPD), subpoenas, and correspondence of OCC. DISC and OCC analyzed the above sources and reports. TPD 4 subsequently reviewed the same sources as well and concluded the following:

**CONTROLLED GROUP ANALYSIS:**

Parent-Subsidiary

DISC's initial analysis demonstrates that there was a parent-subsidiary controlled group relationship between LaSalle and AGI. AGI had defaulted on the financing provided to them by LaSalle by mid-2000. As evidenced by a June 7, 2002 letter (Attachment #3) from LaSalle's attorney, Schwartz Cooper Greenberg Krauss ("SCGK"), LaSalle requested that AGI's stock (100% of its outstanding stock) be transferred/assigned to a nominee designated by SCGK. Before February 20, 2001, all of AGI's outstanding stock was owned by General Industries, Inc. ("GII"), which was owned by Eli S. Jacobs, James Surles, and Todd Stimmel (collectively, the "Former Owners"). As a result of this request, also on February 20, 2001 the stock was assigned to Iowa County Wisconsin Corporation ("ICWC"), which was a company owned by Robert Dunn Glick (partner of SCGK) then transferred to another SCGK attorney, Robert A. Smoller who then in turn incorporated RS Holding Company and transferred AGI's stock to it on April 5, 2001.

Persons are in a controlled group together if they are either 1) in the same "controlled group of corporations" as defined in regulations under I.R.C. § 414(b); or 2) "trades or businesses under common control" with each other as defined in regulations under I.R.C. § 414(c). The Asset Purchase Agreement among DMI, LaSalle, AGI, and RS Holding indicates that in February, 2002, AGI was a Delaware Corporation, and LaSalle was a national banking association (Attachment 10). A national banking association is a "body corporate." Moreover, for purposes of the Internal Revenue Code, "corporation" includes associations.

OCC advises that under the common law of resulting trusts, the person who pays the consideration exchanged for property becomes entitled to the beneficial ownership of the property. The consideration may be the release of a right. The Former Owners received a release from LaSalle as consideration for the stock of AGI. This is noted in the June 7, 2002 letter, where SCGK uses the word "consideration" to describe the release of the Former Owners implicitly. Also, these statements indicate that the Former Owners bargained for a release from LaSalle, such that the release was consideration for the stock of AGI.

Per advice provided by OCC, the presumption of a resulting trust is rebutted "where it appears that the payor: (i) intended to make a gift of the property to the transferee; (ii) had the property transferred to discharge a debt or other obligation owed to the transferee; or (iii) was making a loan of the purchase price to the transferee...." There is no evidence of any of these circumstances, but OCC advises that other evidence might be relevant.

The relationship of the payor and the transferee may be relevant. Since the transfer from GII, each of the three title owners of the stock ("Title Owners") has been an attorney at SCGK – the law firm representing LaSalle regarding AGI – or a corporation wholly owned by such an attorney. Attorneys are agents of their clients. Absent an agreement to the contrary, "when an agent is serving a principal, the agent cannot usurp opportunities it comes across in that relationship for itself," and there was no agreement to the contrary (Subpoena Req. No. 4 to LaSalle, Attachments 8 and 14; Smoller Response to Sch. A, No. 5, Attachment 9).

Moreover, to the extent that Smoller and SCGK were dependent on LaSalle's business, Smoller, not only a principal (partner) of SCGK, but also its Chief Financial Officer (Smoller Response to Sch. E, No. 4, Attachment 9), could be expected to accommodate LaSalle by acquiring the stock as a resulting trustee for LaSalle's benefit. As indicated in SCGK's letter of October 23, 2006, in recent years, 10-20% of Smoller's billable hours were billed to LaSalle; and representation of LaSalle accounted for 5-10% of SCGK's revenues in the fiscal year ending June 30, 1999, and 10-15% of SCGK's revenues in the fiscal year ending June 30, 2000 (Attachment 13).

Finally, SCGK represented AGI as well as LaSalle. This is indicated in SCGK letters of July 12, 2001 (AG 101-04, Attachment 7) and February 22, 2002 (Attachment 11). There is evidence that LaSalle was billed for the drafting of the former letter. The letter was signed for Neil H. Adelman of SCGK. SCGK's bill to LaSalle for "Arkansas General Industries credit facility work" in June and July 2001 lists the drafting of this letter by "NHA" on July 11, 2001 (Attachment 6). Sharing an attorney (and the payment of its fees) seems more typical of a parent-subsidiary relationship than of more creditor-debtor relationship.

OCC also advises that declarations of payor's intention may also be relevant. SCGK described the first Title Owner as "a nominee designated by our firm" (Letter, Attachment 3). Black's Law Dictionary defines "nominee" as "...2. A person designated to act in the place of another, usu. in a very limited way. 3. A party who holds bare legal title for the benefit of others...."

OCC advises that the parties' conduct may also be relevant in determining their intent. There was an "Assignment" of the stock each time it was transferred in 2001 ("First," "Second," and "Third Assignment," Attachment 3). Each of the Assignments defines the nominal transferee as the Assignee. But the First Assignment refers to AGI's indebtedness to the Assignee; GII's guarantee of AGI's obligation to the Assignee; GII's pledge of the stock to the Assignee; and delivery of the stock certificate to the Assignee. The Second and Third Assignments state that the stock certificate "has already been delivered to Assignee." Each of these references to the Assignee describes LaSalle, not the Title Owners (Letter at footnote 3, Release, Attachment 3). If LaSalle and the Title Owners intended that the Title Owners have the beneficial ownership of the stock, it seems likely that the Title Owners would have protected their ownership by insisting that the identity of the Assignee be clarified, and LaSalle would not have objected.

Further, OCC advises that a resulting trust is treated as having been in existence from the time of the transfer at issue; but is extinguished as to trust property that is transferred to a bona fide purchaser, a transferee who gives value and has no notice of the trust. The AGI stock was transferred from GII to ICWC, in consideration of LaSalle's releases of the Former Owners, on February 20, 2001 (Letter, Attachment 3). ICWC transferred title to the stock to Robert Smoller, and Smoller transferred title to RS Holding (Attachment 3). But Robert Smoller stated that no value was exchanged for the stock in either of these transfers (Smoller Responses to Sch. B, 5 and 6, Attachments 9 and 16).

Therefore, based on these facts and evidence of such, TPD4's determination is that LaSalle and the rest of LaSalle's controlled group (See Attachment 18, L-03005-6) is determined to be in a parent-subsidiary controlled group with AGI.

**CONCLUSION:**

In accordance with IRS Code Section 1.414 and based on evidence available, we determined that a parent-subsidiary controlled group of companies existed. However, there was no evidence that a brother-sister relationship of controlled group of companies existed of which PBGC could assess the employer liability.

Copies of the documents reviewed during our controlled group and net worth analysis are listed above in the report and attached.

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

James P. McElligott
Direct: 804-775-4329

# McGUIREWOODS

jmcelligott@mcguirewoods.com
Direct Fax: 804-698-2111

April 1, 2008

**VIA EMAIL AND FIRST CLASS MAIL**

Merrill D. Boone, Staff Attorney
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005-4026

*PBGC v. LaSalle Bank, N.A., et al., Case 1:08-cv-00271 (D. D.C.)*

Dear Merrill:

Confirming our phone conversation this morning, I am authorized to accept service, on or after April 4, 2008, on behalf of defendants LaSalle Bank, N. A. and LaSalle Business Credit, LLC with respect to the above-styled lawsuit pending in the United States District Court for the District of Columbia, Case 1:08-cv-00271. As we have discussed, I hope the Corporation will agree that the other defendants are not needed and can be dismissed.

I also confirm that I can discuss the substantive issues in the case either Thursday of next week or most days during the following week, depending on your schedule. Please call to confirm a date and time, or to discuss other issues.

Sincerely,

James P. McElligott, Jr.

cc: Marta A. Stein, Esq.

EXHIBIT
EXH. 3

## McElligott, James P.

| | |
|---|---|
| From: | McElligott, James P. |
| Sent: | Friday, April 11, 2008 11:11 PM |
| To: | 'Boone Merrill' |
| Cc: | Thomas Stephanie |
| Subject: | RE: venue and amended complaint |

Merrill, your understanding is correct. Sorry for my delay in responding, but I've been out of the office all day Friday April 11. Jay

-----Original Message-----
From: Boone Merrill [mailto:Boone.Merrill@pbgc.gov]
Sent: Friday, April 11, 2008 1:03 PM
To: McElligott, James P.
Cc: Thomas Stephanie
Subject: venue and amended complaint

Jay,

I received your fax of yesterday, indicating that LaSalle's agreement with respect to venue is contingent on PBGC's amended complaint raising substantially the same claims raised by its original complaint. I understand you to mean "claims" in the sense of "rights to payment or equitable remedies," rather than in the more colloquial sense of "allegations." For instance, if PBGC amends the complaint to allege that as the beneficiary of a resulting trust, LaSalle either owned the stock of Arkansas General Industries, Inc. directly, or had an option to acquire that stock, PBGC would not be adding or changing a claim, just providing more detail as to the theories underlying its claim.

At your earliest convenience, please respond to let me know whether my understanding is correct.

Merrill

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PENSION BENEFIT GUARANTY CORPORATION** | : : : | |
| **Plaintiff,** | : : | |
| v. | : : | Case: 1:08-cv-00271-EGS |
| **LASALLE BANK N.A., et al.** | : : | |
| **Defendants.** | : | |

### [PROPOSED] ORDER

Pending before the Court is Plaintiff's Motion for Stay. The Court having considered the parties' memoranda and arguments, the Motion is hereby DENIED.

_____    _____
Dated                                                              Honorable Emmet G. Sullivan
                                                                            United States District Court Judge