**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case: 1:08-00271 |
| LA SALLE BANK N.A., | ) ) | |
| LASALLE BUSINESS CREDIT, LLC, | ) ) | |
| Defendants. | ) | |

**REPORT OF CONFERENCE UNDER FED. R. CIV. P. 26(f) AND LCvR 16.3**

Under the Court's Order of May 30, 2008, Plaintiff Pension Benefit Guaranty

Corporation ("PBGC") and Defendants LaSalle Bank NA and LaSalle Business Credit, LLC

(collectively "LaSalle") submit this Report of their Conference under Fed. R. Civ. P. 26(f) and

LCvR 16.3, which occurred on July 2, 2008, including brief statements of the case, the statutory

basis for all causes of action and defenses, and statements addressing all topics listed in LCvR

16.3(c).

**Statement of the Case**

*Plaintiff's Statement of the Case:*

PBGC is a wholly-owned United States government corporation, established to carry out

the purposes of Title IV of the Employee Retirement Income Security Act ("ERISA"), *i.e.*

29 U.S.C. §§ 1301-1461 (hereinafter "Title IV"). PBGC guarantees certain benefits under single-

employer plans that terminate when Title IV is applicable to them.  When a single-employer

pension plan terminates under 29 U.S.C. § 1342, the contributing sponsor of the plan and each

member of the contributing sponsor's controlled group, as of the termination date, are jointly and

severally liable to PBGC ("Employer Liability").  A "controlled group," as defined in 29 U.S.C. §
1301(a)(14), 26 U.S.C. §§ 414 and 1563 and the regulations thereunder, is a group of
corporations or other business organizations connected by certain levels of common ownership.

Arkansas General Industries, Inc. ("AGI"), sponsored the Arkansas General Industries,
Inc. Hourly-Wage Employees Group Pension Plan ("AGI Plan").  LaSalle Bank, N.A. ("LaSalle
Bank") provided secured financing to AGI, but, by mid-2000, AGI was in default on that loan.
AGI's owner, General Industries, Inc. ("GII"), and GII's individual owners offered to transfer
100% of AGI's stock to a nominee of LaSalle Bank's choosing if LaSalle Bank released GII's
owners from liability for AGI's debt.  LaSalle Bank agreed and on February 20, 2001, executed a
release of GII's individual owners. The release that was executed stated that the AGI stock was
to be transferred to a third party at LaSalle Bank's request.  That third party was a newly formed
holding company owned by an attorney for the law firm representing LaSalle Bank in the
transaction.  The holding company, which owned no other property, provided no consideration
for the AGI stock, but held the stock as a mere nominee of LaSalle Bank. Under the common law
of resulting trusts, the presumption is that the party providing the consideration for stock is the
beneficial owner of the stock.  By providing the sole consideration for AGI, in the form of the
release, LaSalle Bank became the beneficial owner of the stock, and the owner of the stock for
"controlled group" purposes.  Since February 20, 2001, both LaSalle Bank and its wholly-owned
subsidiary, Defendant LaSalle Business Credit, LLC, have been in a controlled group with AGI.

By a September 29, 2003, order of the U.S. District Court for the Eastern District of
Arkansas, the AGI Plan was terminated under 29 U.S.C. § 1342(c), with a termination date of
February 19, 2002.  On February 15, 2008, PBGC issued an initial determination that LaSalle
was liable for Employer Liability in the amount of $1,064,188.64 as of January 31, 2008, plus

interest as it continues to accrue at the applicable rate.  LaSalle appealed that initial

determination on March 31, 2008.

On February 19, 2008, PBGC commenced this action against LaSalle to collect Employer

Liability.  On May 29, 2008, LaSalle answered PBGC's First Amended Complaint.  On June 20,

2008, PBGC moved to stay this Court's proceedings until December 31, 2008, to allow the

PBGC Appeals Board to decide LaSalle's appeal.  LaSalle opposed the motion to stay on July 1,

2008.  PBGC's reply to the opposition is due July 14, 2008.[1]

***Defendants' Statement of the Case:***

LaSalle Bank, N.A. ("LaSalle") was a secured creditor of Arkansas General Industries,

Inc. ("AGI").  On February 15, 2008, Plaintiff PBGC made a determination that AGI's Pension

Plan was terminated with unfunded liabilities and that LaSalle was a part of AGI's controlled

group and, thus, liable for the unfunded liability of AGI's pension plan.  PBGC's determination

was not based on the applicable statute, Internal Revenue Code §1563 and regulations

thereunder, but rather was based on a legal conclusion by PBGC's Office of Chief Counsel that

LaSalle "directly owned" AGI stock under alleged "common law principles" because the stock

of AGI was allegedly assigned for the benefit of LaSalle.

First, the stock was not assigned or transferred to LaSalle, but rather to an independent

legal entity.  Neither the stock transfer nor the independent legal entity was directed by LaSalle.

LaSalle did not own or direct the separate legal entity.  LaSalle was never an owner of its debtor

AGI and never owned AGI stock, directly or indirectly.  Simply states, at all times, LaSalle acted

as a secured creditor.  For these reasons, AGI has never been part of AGI's "controlled group."

---

[1]    LCvR 7(d); Fed. R. Civ. P. 6(a), (d).

3

Second, the alleged "common law principles" relied upon by PBGC's office of Chief Counsel do not support PBGC's determination, and PBGC's Office of Chief Counsel has failed to consider governing contrary authority under applicable law.

Two business days after finally making its February 15, 2008 determination that LaSalle is part of the controlled group and, therefore, liable for the unfunded liability of AGI's pension, the PBGC sued the LaSalle Defendants and others for the unfunded benefit liabilities of AGI's pension plan determined by Plaintiff.  The PBGC based its decision on legal advice (from the same PBGC attorneys who prosecute this lawsuit) regarding "the common law of resulting trusts."  The PBGC's determination relied totally on its lawyers' interpretations of the common law of trusts and other common law principles, citing *Black's Law Dictionary*, the *Restatement (Second) of Contracts, Scott on Trusts,* the *Restatement (Third) of Trusts* and various state court decisions construing corporate and trust law.  PBGC's determination did not discuss contrary authority on control group liability submitted by LaSalle.

On March 31, 2008, LaSalle objected to the PBGC's February 15, 2008 determination because LaSalle was a creditor, not an owner, and appealed administratively under protest because "PBGC has unreasonably delayed in making its initial determination of liability thereby prejudicing LaSalle and [i]n addition, [the PBGC's lawsuit has] rendered any administrative appeal of this 'initial determination' futile and illusory."

On May 9, 2008, LaSalle accepted service of the Amended Complaint, in which Plaintiff dropped all other defendants in exchange for a promise that LaSalle would not challenge venue. LaSalle timely answered and is currently reviewing documents produced by PBGC in response to LaSalle's request.

The Court's Initial Pretrial Order issued May 30, 2008.  The Local Rule 16.3(c) conference occurred by telephone conference on July 2, 2008, with a follow up telephone conference July 9, 2008.  Plaintiff's motion to stay was filed June 20, 2008, and LaSalle filed a timely brief in opposition, arguing that a stay was unnecessary and improper and that the Court should deny the motion to stay because, by filing suit, 1) PBGC waived exhaustion of administrative appeals and prevented meaningful exhaustion by LaSalle, and 2) PBGC has filed this motion for stay without first attempting to narrow the issues or comply with the Local Rules and the pretrial order.

**Statutory Basis for All Causes of Action and Defenses**

*Plaintiff's Statement of Statutory Basis for Its Causes of Action*

Under 29 U.S.C. § 1362(a), (b), the contributing sponsor of the subject plan and each member of its controlled group are liable to PBGC for unfunded benefit liabilities, as defined in . 29 U.S.C. § 1301(a)(18).  "Controlled group" is defined under 29 U.S.C. § 1301(a)(14), which incorporates by reference 26 U.S.C. § 414 and the regulations thereunder.  Those regulations in turn incorporate 26 U.S.C. § 1563.

*Defendants' Statement of Statutory Basis for Their Defenses*

LaSalle's defenses relate to the fact that it was never an owner of its debtor AGI under the applicable statute, Internal Revenue Code §1563 and regulations thereunder; and that at all times LaSalle acted as a secured creditor, not an owner.  Accordingly, LaSalle has never been part of AGI's "controlled group." *See Central States, Southeast and Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 891-92 (7th Cir. 1992) ("[a secured creditor] has no more 'control' over the proprietorship than would any other secured creditor."); *see also Brown v. Astro Holdings, Inc.,* No. 04-5031, 2005 U.S. Dist. LEXIS 18406 (E.D. Penn., August 29, 2005)

(IRS common control regulations should be construed literally and courts may not impose other theories of liability to put an entity in the control group).

LaSalle has also disputed that the AGI Pension Plan had any unfunded liabilities based on a December 21, 2005 report prepared by Plaintiff PBGC, revealing that PBGC audited the assets of the AGI Pension Plan "to verify the fair market value of the [AGI Pension Plan assets] as of February 19, 2002, the date of plan termination ("PBGC December 21, 2005 Asset Audit Report"). The PBGC December 21, 2005 Asset Audit Report showed that AGI Pension Plan Assets exceeded AGI Pension Plan liabilities on February 19, 2002, and thus the AGI Pension Plan has no unfunded liabilities according to PBGC's own audit.

Because of the unreasonably delay by PBGC in making its determination, which delay has prejudiced LaSalle and because of the foregoing facts in which PBGC seeks to make a secured creditor liable on a "controlled group" theory, LaSalle has also asserted, on information and belief, defenses of statute of limitations, laches, discharge in bankruptcy, and failure of consideration.

## Matters to Be Discussed by the Parties under LCvR 16.3(c)

PBGC has addressed many of these issues in the alternative, pending resolution of its Motion to Stay Proceedings. PBGC submits that, if that motion is granted, no party can take any action in this proceeding before December 31, 2008, and the need for discovery will be both postponed due to the stay, and eliminated because of the administrative record, short of some extraordinary showing by LaSalle. If the stay is denied, discovery would proceed as in a more typical case. PBGC addressed each of these possibilities in order to conserve the resources of the Court and the parties. LaSalle believes that a stay is unnecessary and that the case should proceed in the ordinary course, allowing discovery and submissions by both parties.

***(1) Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion.***

The case is likely to be disposed of by dispositive motions.  No dispositive motions have been filed to date.

***(2) The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.***

No other parties should be joined, or the pleadings amended, later than July 31, 2008, with the following exception.  If a stay is granted and the PBGC Appeals Board issues a decision that LaSalle is liable to PBGC, PBGC shall amend or supplement its complaint under Fed. R. Civ. P. 15(d) as appropriate no later than January 21, 2009, and LaSalle may amend or supplement its answer within ten days thereafter.[2]  In that event, the issues will be narrowed because the scope of judicial review is narrowed under 5 U.S.C. § 706(2).

If the PBGC Motion to Stay Proceedings is not granted, the parties will attempt to narrow the issues by stipulation.

***(3) Whether the case should be assigned to a magistrate judge for all purposes, including trial.***

The case should <u>not</u> be assigned to a magistrate judge.

***(4) Whether there is a realistic possibility of settling the case.***

The parties agree that there is a realistic possibility of settling the case.

***(5) Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients. In assessing the above, counsel shall consider:***
***(i) the client's goals in bringing or defending the litigation;***
***(ii) whether settlement talks have already occurred and, if so, why they did not produce an agreement;***

---

[2]  If the PBGC Appeals Board issues a decision that LaSalle is not liable to PBGC, PBGC will seek the dismissal of this case under Fed. R. Civ. P. 41(a).

*(iii) the point during the litigation when ADR would be most appropriate, with special consideration given to:*

    *(aa) whether ADR should take place after the informal exchange or production through discovery of specific items of information; and*

    *(bb) whether ADR should take place before or after the judicial resolution of key legal issues;*

*(iv) whether the parties would benefit from a neutral evaluation of their case, which could include suggestions regarding the focus of discovery, the legal merits of the claim, an assessment of damages and/or the potential settlement value of the case; and*

*(v) whether cost savings or any other practical advantages would flow from a stay of discovery or of other pre-trial proceedings while an ADR process is pending.*

Counsel have discussed ADR with their clients. The case probably could benefit from some form of mediation. The parties are investigating whether to seek private or court-sponsored mediation. No settlement talks have occurred. The mediation should take place after the parties have exchanged certain information, but need not await the judicial resolution of any issues. The parties might benefit from a neutral evaluation of the case.

**(6) Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

The case is likely to be resolved on cross-motions for summary judgment. PBGC proposes that motions for summary judgment should be filed no later than 1) March 31, 2009, if PBGC's Motion to Stay Proceedings is granted; or 2) 90 days after the date for the completion of all discovery, if PBGC's Motion to Stay Proceedings is denied. LaSalle proposes that motions for summary judgment should be filed no later than 1) February 28, 2009, if PBGC's Motion to Stay Proceedings is granted; or 2) 60 days after the date for the completion of all discovery, if PBGC's Motion to Stay Proceedings is denied. Any opposition to a motion for summary judgment should be filed no later than 30 days after the date that the motion is filed. Any reply to an opposition to a motion for summary judgment should be filed no later than 21 days after the date that the opposition is filed.

***(7) Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), F.R.Civ.P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.***

The parties differ regarding the initial disclosures required by Fed. R. Civ. P. 26(a)(1). PBGC asserts that if the PBGC Appeals Board issues a decision, this proceeding will be exempt from initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(B)(i). PBGC objects that initial disclosures will not be appropriate unless PBGC's Motion to Stay Proceedings is denied, in which case initial disclosures should be made within 14 days after the date of the order denying that Motion. *See* Fed. R. Civ. P. 26(a)(1)(C). LaSalle asserts that the initial disclosures described in Fed. R. Civ. P. 26(a)(1) should be made on or before July 25, 2008.

***(8) The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.***

The parties differ regarding the period during which discovery should be taken.

PBGC's position is that if the Court grants PBGC's Motion to Stay Proceedings, and the PBGC Appeals Board holds that LaSalle liable, nothing should be discoverable other than the administrative record supporting that decision, and the parties should be allowed until February 28, 2009, to complete discovery. PBGC routinely provides the administrative record in such cases, even without a request, within 30 days of the decision.

PBGC believes that if the court denies PBGC's Motion to Stay Proceedings, the parties should be allowed 180 days after the date of the order denying that Motion to complete discovery. PBGC asserts that the underlying facts regarding the transfer of AGI are within LaSalle's control. Moreover, while PBGC has produced to LaSalle the documents that it relied upon or considered in making its initial determination of LaSalle's liability, PBGC has not received the documents LaSalle relies on for its defenses. If this case will be litigated *de novo*,

9

PBGC would want to propound interrogatories to ascertain the grounds for LaSalle's defenses, and request production of the documents relating to them; depose witnesses, expert or otherwise, that LaSalle will call; and request admissions.

LaSalle believes that this is a case for which many of the facts in this case can be stipulated. As a result, LaSalle's position is that discovery can easily be completed by December 14, 2008.

The parties agree that given the possibility that discovery will be obviated by stipulations or by a PBGC Appeals Board decision, setting limits on the form or content of discovery at this time would not be a good use of party and judicial resources, but reserve their rights to seek such limits as needed.

***(9) Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), F.R.Civ.P., should be modified, and whether and when depositions of experts should occur.***

If this case is limited to the review of a PBGC Appeals Board decision, there will be no need for expert witnesses. Otherwise, PBGC believes that the expert witness reports and information described in Fed. R. Civ. P. 26(a)(2) should be exchanged no later than 60 days before the date for the completion of all discovery, or as provided in Fed. R. Civ. P. 26(a)(2)(C)(ii) if applicable, to allow parties to depose expert witnesses, who are likely to be needed for highly technical issue of the amount of benefit liabilities, and use those depositions in their summary judgment motions, if appropriate. PBGC already has provided LaSalle with the documents that it relied on or considered in making its initial determination regarding that issue.

LaSalle believes that the expert witness reports and information described in Fed. R. Civ. P. 26(a)(2) should be exchanged no later than 30 days after the close of fact discovery, to allow parties to depose expert witnesses 30 days thereafter.

10

**(10) In class actions, appropriate procedures for dealing with Rule 23, F.R.Civ.P. proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision**
.

  This is not a class action.

**(11) Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

  Neither the trial and/or discovery, if any, should be bifurcated or managed in phases.

**(12) The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

  If the Court grants summary judgment for either party, there will be no need for a trial or a pretrial conference.  Otherwise, PBGC believes that the pretrial conference should be held at least 45 days after all motions for summary judgment have been denied.  LaSalle believes that the pretrial conference should be held within 30 days after all motions for summary judgment have been denied.

**(13) Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

  The trial date should be set at the pretrial conference.

*(14) Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.*

      None.

Respectfully submitted,

Dated: July 10, 2008

| | |
|---|---|
| ATTORNEYS FOR LASALLE BANK, N.A. and LASALLE BUSINESS CREDIT, LLC | /s/ Merrill D. Boone<br>ISRAEL GOLDOWITZ<br>Chief Counsel, D.C. Bar No. 291120<br>KAREN L. MORRIS<br>Deputy Chief Counsel, D.C. Bar No. 419786 |
| /s/ Marta A. Stein<br>Marta A. Stein<br>Illinois A.R.D.C. # 6198898<br>James P. McElligott<br>Virginia State Bar # 14109<br>Robert Plotkin<br>DC Bar # 160176<br>MCGUIREWOODS LLP<br>77 West Wacker Drive, Suite 4100<br>Chicago, IL 60601<br>Phone: 312.849.8100<br>Fax: 312.920.6593<br>E-mails: mstein@mcguirewoods.com<br>jmcelligott@mcguirewoods.com<br>rplotkin@mcguirewoods.com | STEPHANIE L. THOMAS<br>Assistant Chief Counsel, D.C. Bar No. 440205<br>MERRILL D. BOONE<br>Attorney, D.C. Bar No. 431428<br>PENSION BENEFIT GUARANTY<br>   CORPORATION<br>Office of the Chief Counsel<br>1200 K Street, N.W.<br>Washington, DC 20005-4026<br>Tel. No. (202) 326-4020, ext. 3656<br>Fax No. (202) 326-4112<br>Emails: boone.merrill@pbgc.gov &<br>efile@pbgc.gov |